STATE of Iowa, Appellee,

v.

Daniel C. MARR, Appellant.

No. 66304.

Supreme Court of Iowa.

Feb. 17, 1982.

As Corrected March 11, 1982.

Chadwyn D. Cox, of Reynolds, Kenline, Breitbach, McCarthy, Clemens, McKay & Nigg, Dubuque, for appellant.

Thomas J. Miller, Atty. Gen., and Michael Keith Jordan, Asst. Atty. Gen., for appellee.

Considered by UHLENHOPP, P. J., and McCORMICK, ALLBEE, LARSON, and SCHULTZ, JJ.

LARSON, Justice.

The defendant Daniel C. Marr was convicted of kidnapping in the first degree, §§ 710.1, 710.2, and sexual abuse in the second degree, §§ 709.1, 709.3, The Code 1979. On appeal he claims the trial court erred in denying (1) his motion for dismissal on the charge of kidnapping and (2) his motions for mistrial on the ground that juror exposure to a prejudicial newspaper article violated his constitutional right to a fair trial.

I.  *The motion to dismiss.*

At the close of the evidence the defendant moved to dismiss the charge of kidnapping on the ground there was insufficient evidence to support the charge. The trial court denied the motion, as well as the defendant's objections to the instructions on kidnapping, stating "there is reasonable evidence before the jury to make a finding in regard to kidnapping as charged." (Although the defendant referred to his trial motion as one for dismissal, it is evident that it was one for judgment of acquittal, Iowa R.Crim.P. 18(10)(a).) This court's scope of review is thus limited: was there substantial evidence from which a reasonable jury could find that the defendant kidnapped the victim? *See* Iowa R.App.P. 14(f)(1); *State v. Sharpe,* 304 N.W.2d 220, 225–26 (Iowa), *cert. denied,* —— U.S. ——, 102 S.Ct. 134, 70 L.Ed.2d 113 (1981).

Viewing the evidence in the light most favorable to the State, Iowa R.App.P. 14(f)(2); *Sharpe,* 304 N.W.2d at 225–26, the jury could have found the following facts. The victim had left her apartment house around 10:00 p. m. to walk to a nearby drug store. Upon leaving the store, she noticed a man—whom she later identified as the defendant—sitting in a car and staring at her. While walking back to her apartment she heard a car door slam and observed the defendant following her at a distance of fifty feet. She picked up her pace, and he began to run after her; when she began to run too, he yelled "Hey wait a minute," and she stopped and turned around to face him. She screamed and he clamped his hand over her mouth, threatening her "not to scream, or [she] would never scream again." At this point the two were on the sidewalk directly in front of the victim's apartment house, which abutted the sidewalk. The defendant slammed her against the corner of the building, and then shoved her down to the ground around to the side of the

building, some ten to fifteen feet into a gangway separating it from a neighboring house. One of her arms was pinned under her back, allowing the defendant to lift her shirt, pull down her pants, and sexually abuse her. Although she believed he had a knife, the defendant apparently did not have any kind of weapon in his possession. She could not scream or breathe easily because he clutched her throat; in fact he applied so much pressure that she almost lost consciousness. Alerted by a noise outside the apartment, the victim's husband entered the gangway and interrupted the attack, which had lasted two or three minutes.

Section 710.1(3) defines, in part, the crime of kidnapping:

A person commits kidnapping when he or she either *confines . . . or removes* a person from one place to another, knowing that he or she has neither the authority nor the consent of the other to do so; provided, that to constitute kidnapping the act must be accompanied by . . . [t]he intent to . . . subject the person to a sexual abuse.

(Emphasis added.) In *State v. Rich*, 305 N.W.2d 739 (Iowa 1981) this court discussed the relationship between kidnapping and sexual abuse, regarding the confinement or removal elements of section 710.1(3). We concluded the kidnapping statute requires *more than the confinement or removal that is an inherent incident of commission of the crime of sexual abuse.* Although *no minimum period of confinement or distance of removal is required* for conviction of kidnapping, the confinement or removal *must definitely exceed that normally incidental to the commission of sexual abuse.* Such confinement or removal must be *more than slight, inconsequential, or an incident inherent in the crime of sexual abuse so that it has a significance independent from sexual abuse.* Such confinement or removal may exist because it *substantially increases the risk of harm to the victim, significantly lessens the risk of detection, or significantly facilitates escape following the consummation of the offense.*

*Id.* at 745 (emphasis added); *accord, State v. Knupp,* 310 N.W.2d 179, 182–83 (Iowa 1981). *See also State v. Knutson,* 220 N.W.2d 575, 579 (Iowa 1974). The question here is whether there was substantial evidence the defendant's actions "definitely exceed[ed] that normally incidental to the commission of sexual abuse," *Rich,* 305 N.W.2d at 745.

The State's argument focuses on the language in *Rich* that "confinement or removal may exist because it substantially increases the risk of harm to the victim, significantly lessens the risk of detection, or significantly facilitates escape following the consummation of the offense." *Id.* It argues these factors existed in the present case because: (1) the defendant first observed the victim in the drug store parking lot, which was brightly illuminated; however, "he chose to follow [her] to an area which became progressively darker" [*viz.,* nearer to her apartment], indicating "a desire to ensure a degree of privacy beyond that necessary to commit the assault," and thus lessening the chances of detection; (2) he shoved her into the darkly-lit gangway, removing her from the public view and further lessening the chances of detection; (3) he choked her after she screamed and when they were in the gangway, which increased the risk of harm to the victim; and (4) he escaped from the scene after the victim's husband arrived because the husband was initially unable to determine, due to the poor visibility in the gangway, that his wife was being attacked. Accordingly, the State concludes there was a confinement or removal within the meaning of the statute.

In two recent decisions this court has approved separate charges and convictions for sexual abuse and kidnapping, even though the events underlying each charge were not substantially removed in time or space. Thus, in *Rich,* 305 N.W.2d 745–46, we held a jury question on kidnapping was presented where the accused, armed with a "sharp object," accosted his victim in an open walkway in a shopping mall and removed her to a mall restroom, where the

sexual abuse occurred. Although the "movement of the victim the short distance from the mall to the restroom in and of itself was not sufficient confinement or removal within the meaning of section 710.1," *id.* at 745, other factors indicated the accused's actions were more than incidental to the commission of sexual abuse:

First, although the doors to the shopping center were locked, defendant looked into the restroom to ensure further privacy. Pictures introduced as exhibits show that defendant did not choose the restroom for his sexual assault for the personal comfort of himself or his victim. Rather, his actions indicate that he sought the seclusion of the restroom as a means of avoiding detection. Secondly, the binding of the victim's hands behind her back was not necessary to the commission of the sexual abuse and is not a normal incident of that offense.

Defendant's activities subsequent to the consummation of the sexual abuse [which included placing the victim in a large three-wheeled trash container, covering her with trash, threatening her to remain silent, and moving her to various points within and without the shopping mall] are also significant. Although these subsequent activities do not show confinement or removal with "intent to subject the person to a sexual abuse," as literally required by section 710.1(3), defendant's continued confinement and movement of the victim were a continuation of the commission of the sexual abuse and so intertwined with that offense as to come within the contemplation of sections 711.1–.2. The confinement and movement subsequent to the consummation of the act of sexual abuse were not incidental to the commission of that offense, but rather, we believe, for the purpose of avoiding detection or facilitating defendant's escape.

Considering the totality of the facts, there was substantial evidence to support the kidnapping charge, and a jury question was engendered.

*Id.* at 745–46.

Subsequently, in *Knupp*, 310 N.W.2d at 182–83, we held there was sufficient evidence to support sexual abuse and kidnapping convictions where the accused

pulled the victim into his vehicle, drove away before she could escape, and took her six or seven blocks to a point under a bridge. After she got out of the car he hit her several times to force her back into the car and to submit to his sexual abuse.

. . . .

Defendant's actions substantially exceeded that which could have been considered merely incidental to the sexual abuse, substantially increased the risk of harm to the victim, and significantly lessened the risk of detection.

*See State v. Holderness*, 301 N.W.2d 733, 740 (Iowa 1981) (fact question engendered under § 710.1(3) where sexual-abuse victim detained for two hours and transported by automobile several miles from city to country); Annot., *Kidnapping—Asportation for Other Crime*, 43 A.L.R.3d 699, 709–13 (1972). *See also State v. Cross*, 308 N.W.2d 25 (Iowa 1981); *State v. Padgett*, 300 N.W.2d 145 (Iowa 1981).

Although it has been stated section 710.1(3) encompasses "an extremely wide variety of factual circumstances," 1 J. Roehrick, *The New Iowa Criminal Code: A Comparison* 110 (1978), we do not believe the facts of this particular case warranted the defendant's conviction for kidnapping. To hold otherwise merely exemplifies the defendant's assertion that every rape would thus constitute a kidnapping, as well as every robbery or other assault involving some minimal degree of confinement or removal. In the present case substantial evidence was not presented that the defendant's actions *substantially* increased the risk of harm to the victim, that the risk of detection was *significantly* lessened, or that following the sexual abuse escape was *significantly* facilitated thereby. *See Rich*, 305 N.W.2d at 745. Moreover, the means by which control of the victim was secured and the duration of that control distinguish this case from *Rich*, as well as *Knupp*.

We conclude the State failed to sustain its burden of proof under the kidnapping charge that the confinement or removal definitely exceeded that normally incidental to the commission of sexual abuse. *See Rich*, 305 N.W.2d at 745. This conclusion is consistent with the weight of legal commentary. *See, e.g.*, J. Yeager & R. Carlson, *Iowa Practice & Procedure* § 236, at 66 (to be punishable as a separate offense "the acts of the kidnapper should be required to add substantially to the heinousness of the sexual abuse") (1979); *Model Penal Code & Commentaries Part II* § 212.1, Comment 1 (1980) ("many instances of forcible rape involve some coerced movement of the victim or unlawful restraint for enough time to complete the sex act . . . . [and] unless particular care is taken, trivial aspects of robbery, rape, or some other crime will end up classified as the most serious version of Kidnapping"); Note, *A Rationale of the Law of Kidnapping*, 53 Colum.L.Rev. 540, 556 (1953) ("virtually all conduct within the scope of Kidnapping law is punishable under some other criminal provision . . . . [and a kidnapping charge] is defensible only if an asportation or detention significantly increases the dangerousness of the defendant's behavior"). *See generally* 1 *Wharton's Criminal Law & Procedure* § 374, at 741–42 (R. Anderson ed. 1957).

The trial court erred in denying the defendant's motion to dismiss. Accordingly, we reverse the judgment entered on the verdict of first-degree kidnapping.

## II. *The motions for mistrial.*

Jury selection was completed on the second day of trial. That night an article on the trial appeared in the Dubuque Telegraph Herald which contained, as the State later conceded, "numerous [factual] errors, to put it mildly . . . as well as prejudicial material." In part the article disclosed, in a closing paragraph, that the defendant had been "discharged from a halfway house in Iowa City last September after serving four-and-one-half years at the Iowa Men's Reformatory in Amamosa." The next morning defense counsel moved for a mistrial.[1]

Following the procedures set forth in *State v. Bigley*, 202 N.W.2d 56, 58 (Iowa 1972), the trial court, assisted by counsel, conducted individual examinations of three jurors who admitted reading the article. The first juror stated that he had read only "the first couple of paragraphs" of the article, that all he could remember was its discussion of the jury selection, and that his ability to remain impartial was unaffected by his exposure to it. The second and third jurors, who had read the article in its entirety, made similar statements and reaffirmations regarding their recollection and impartiality. The trial court did not discharge the jurors; rather, he carefully directed them not to disclose the substance of the interviews to the other jury members.

When the State's evidence was completed that day, the court denied the defendant's motion for mistrial. The next morning the defendant moved for mistrial again, "based upon . . . the voir dire testimony of the three jurors in the court's chambers yesterday morning." Again the motion was denied. The defendant now claims the court erred in permitting the trial to continue in the absence of an impartial jury.

■ General principles relating to pretrial publicity apply to the circumstances of this case, and are succinctly summarized in *United States v. Garza*, 664 F.2d 135, 138 & n.1 (7th Cir. 1981):

> Due process . . . requires that an accused be tried by an impartial jury free from outside influences. Impartiality, however, does not mean complete juror ignorance of issues and events. If a juror can put aside his impressions gained from pretrial publicity and render a fair verdict based upon the evidence, the impartiality requirement is satisfied. Where juror exposure to pretrial publicity can be shown, defendants must still demonstrate that actual prejudice resulted.

1. Prior to trial the defendant had unsuccessfully moved for a change of venue, Iowa R.Crim.P. 46, on the ground "there is a substantial likelihood that a fair and impartial trial cannot be had due to the extensive and prejudicial news coverage given to this Defendant."

Prejudice is presumed in rare cases where pretrial publicity is pervasive and inflammatory. But more often trials are deemed fair in spite of widespread publicity.

(Citations omitted.) *See Smith v. Phillips,* —— U.S. ——, ——, 102 S.Ct. 940, 946, 71 L.Ed.2d 78, 86 (1982). Although on appeal the defendant argues that mere jury exposure to a prejudicial newspaper article automatically requires the granting of a motion for mistrial, this court has consistently rejected such a per se rule. *See State v. Frank,* 298 N.W.2d 324, 327 (Iowa 1980); *State v. Sallis,* 262 N.W.2d 240, 246, 247 (Iowa 1978); *Bigley,* 202 N.W.2d at 57; *State v. Sefcheck,* 261 Iowa 1159, 1173, 157 N.W.2d 128, 136 (1968); *State v. Clough,* 259 Iowa 1351, 1361, 147 N.W.2d 847, 853 (1967). We decline to depart from our reasoning in those cases.

Accordingly, we must determine whether the defendant has satisfied his burden of proving actual prejudice, *see Smith,* —— U.S. at ——, 102 S.Ct. at 946, 71 L.Ed.2d at 86; *Chandler v. Florida,* 449 U.S. 560, 573–575, 101 S.Ct. 802, 809–10, 66 L.Ed.2d 740, 751–52 (1981); *Murphy v. Florida,* 421 U.S. 794, 799–800, 95 S.Ct. 2031, 2035–36, 44 L.Ed.2d 589, 595 (1975); *Irvin v. Dowd,* 366 U.S. 717, 722–23, 81 S.Ct. 1639, 1642–43, 6 L.Ed.2d 751, 756 (1961), or whether, under the circumstances, the publicity of the trial was so pervasive and inflammatory that prejudice must be presumed, *see Sheppard v. Maxwell,* 384 U.S. 333, 363, 86 S.Ct. 1507, 16 L.Ed.2d 600, 621 (1966); *Estes v. Texas,* 381 U.S. 532, 542–43, 85 S.Ct. 1628, 1632–33, 14 L.Ed.2d 543, 550 (1968).

■■■ As a general rule, this court will not reverse a trial court's ruling on a mistrial motion based on juror exposure to potentially prejudicial materials absent error amounting to an abuse of discretion. *Frank,* 298 N.W.2d at 327. We find no such abuse here. The defendant argues only that "it is unrealistic to assume the exposed jurors could effectively and totally delete [the] highly prejudicial information [in the article] from consideration in their decision-making process." The record, however, belies this argument. Each juror exposed to the article only recalled its reporting of the jury selection;[2] none testified about its reference to the defendant's past incarceration[3] or its factual errors. And, although not dispositive, *Sheppard,* 384 U.S. at 351, 86 S.Ct. at 1516, 16 L.Ed.2d at 614, each juror emphasized his willingness to decide the defendant's fate on the basis of the evidence produced at trial. Under this record we cannot conclude the defendant has satisfied his burden of proving actual prejudice.

Moreover, the circumstances of this case are not so rare as to warrant a presumption of prejudice. Although the article was factually inaccurate and contained prejudicial material, it alone does not rise to the level of pervasive and inflammatory publicity denying the defendant due process. *See Smith,* —— U.S. at ——, 102 S.Ct. at 948, 71 L.Ed.2d at 89 (O'Connor, J., concurring); *Bigley,* 202 N.W.2d at 57; *Clough,* 259 Iowa at 1360, 147 N.W.2d at 853. The trial court did not abuse its discretion in denying the motions for mistrial.

We reverse the judgment on kidnapping in the first degree, and affirm it on sexual abuse in the second degree.

**REVERSED IN PART AND AFFIRMED IN PART.**

----

2. One juror additionally remembered the article mentioned something "about 19th Street."

3. During the defendant's examination on direct and on cross the jury was informed of his prior conviction and imprisonment.