**STATE of Iowa, Plaintiff-Appellee,**

**v.**

**David E. COEN, Defendant-Appellant.**

**No. 85-138.**

Court of Appeals of Iowa.

Dec. 18, 1985.

[redacted]

[redacted]

Michael J. McCarthy, Davenport, for defendant-appellant.

Thomas J. Miller, Atty. Gen. and Roxann M. Ryan, Asst. Atty. Gen., for plaintiff-appellee.

Heard by OXBERGER, C.J., and SNELL and SACKETT, JJ., but considered en banc.

SNELL, Judge.

Defendant Coen was convicted of kidnapping in the third degree and assault with intent to commit sexual abuse as a result of an incident which occurred on August 16, 1984. On that date at around 11 p.m. Natalie Weaver, a nineteen year old, parked her car outside Food For Less and went into the store. When she returned to her car, she heard air coming out of a tire, felt around on the sidewall of the tire, and could feel air coming out. She decided to try to drive to her grandparents' house without changing it. As she started to leave the parking lot, a man Natalie identified as Coen told her that her tire was flat and volunteered to change it for her. Coen was dressed in cut-off blue jean shorts and running shoes without a shirt. He told Natalie he had been jogging. After changing the tire, Coen asked Natalie for a ride home saying he lived by Hardy's on Brady Street. Natalie was going that way and agreed to give Coen a lift feeling obligated

because he changed the tire for her. It didn't occur to her at the time that it was strange for a jogger to be asking for a ride. During the ride, Coen suddenly told Natalie that he had a knife, she was not to scream and she was supposed to do as he said. Natalie could not see if Coen actually had a knife because it was dark. They were then in an area of factories, warehouses, railroad tracks, and no streetlights. Natalie continued driving for about one minute; then she saw a jogger. Natalie honked her horn, slammed on her brakes, jumped from the car, and ran to the jogger. Coen fled into a nearby cornfield.

At trial the State called three women who testified that between July and August of 1984, Coen attempted to catch a ride with or give a ride to them. Each woman testified that after visiting a business establishment, she discovered that her car had a flat tire. Coen flagged down each woman to tell her that she had a flat tire and offered to fix it. None of these women accepted a ride with Coen or gave him a ride. Each woman reported that the flat tire had a puncture like that made with a knife.

The trial court also admitted the testimony of a woman who was sexually abused by Coen in 1979. On December 29, 1979, Karen Butler, fifteen years old at that time, accepted a ride with Coen. Coen threatened her with a knife and ordered her to do as he said. He drove her into the country and sexually abused her. Coen's 1980 conviction for second-degree sexual abuse arose out of this incident.

The trial court admitted Karen Butler's testimony concluding it was relevant to the issue of Coen's intent to subject Natalie Weaver to sexual abuse. The court gave the jury an instruction that it should only consider Karen Butler's testimony for the limited purpose of showing intent, motive, or absence of mistake, and not to prove Coen's character.

The jury found Coen guilty of kidnapping in the third degree and assault with intent to commit sexual abuse. Coen has appealed.

Coen raises two contentions on appeal: (1) that the trial court erred by admitting Karen Butler's testimony and (2) that the evidence was insufficient to prove the kidnapping charge.

## I. Butler's Testimony.

■■■ **A. Relevance.** In reviewing the trial court's exercise of discretion in admitting the testimony regarding Coen's prior offense, we first consider the basis upon which relevance of the evidence may be found. *State v. Cott*, 283 N.W.2d 324, 326 (Iowa 1979). The general rule is that "one crime cannot be proved by proof of another." *Id.* "The purpose of the rule is to exclude from the jury's consideration evidence which has no relevancy except to show that the defendant is a bad person and thus likely committed the crime in question." *Id.* However, evidence of other crimes may escape the rule's prohibition if it is relevant to prove other than the defendant's criminal disposition. *Id.*

Iowa Rule of Evidence 404(b) codifies the general rule:

> **Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In order to be relevant to the issues, the other offenses must be reasonably similar to the act on which the prosecution is based. *State v. Fetters*, 202 N.W.2d 84, 92 (Iowa 1972). "There must be such connection between the offense charged and the other offenses that the latter can reasonably be said to tend to establish the first, or some essential fact in issue. In other words, the other offenses must be wrongful acts, crimes, offenses or attempted offenses of a like nature to the charge against the accused." *Id.*

The principal issue at trial was whether Coen possessed the requisite intent to com-

mit sexual abuse. It was a necessary part of the State's case to prove beyond a reasonable doubt Coen assaulted Natalie with such intent. The intent to commit sexual abuse was an element of both of the crimes charged. The State is entitled to present evidence sufficient to meet its high burden of proof on each element of a criminal offense. *State v. Conner*, 314 N.W.2d 427, 429 (Iowa 1982).

The other crime described by Butler in which Coen was involved meets the test of relevancy. Karen Butler's testimony indicates that she was sexually abused by Coen after he threatened her with a knife. The sexual abuse occurred after Coen drove Butler in a car to a secluded area. The facts in the present incident indicate that, as in the prior incident, Coen was in a car with Natalie Weaver, he directed her to drive to a secluded area (in fact, the same area in which the prior sexual abuse occurred), and he threatened her with a knife.

Clearly, the testimony of Karen Butler established the commission of a prior crime and an act of sexual abuse which commenced in a manner similar to that with which Coen is presently charged.

 Coen argues that the prior crime was too remote in time to be relevant. To resolve the question of whether the incidents were too remote in time we are guided by principles enunciated by the Iowa Supreme Court:

> An objection based on remoteness essentially raises an issue of relevancy. "While remoteness in point of time does not necessarily render evidence irrelevant, it may do so where the elapsed time is so great as to negative all rational or logical connection between the fact sought to be proved and the remote evidence offered in proof thereof." 1 Jones on Evidence, § 4:1 at 380 (Sixth Ed.1972). The basic test of relevancy is whether the evidence offered would make the desired inference more probable than it would be without the evidence. * * The question of relevancy, and thus the effect of remoteness, is determined by the sound discretion of the trial court.

*State v. Maestas*, 224 N.W.2d 248, 251 (Iowa 1974), quoting *State v. Engeman*, 217 N.W.2d 638, 639 (Iowa 1974). The length of time affects the weight rather than the admissibility of other crimes. *Maestas*, 224 N.W.2d at 251.

In *Maestas*, the court faced other-crimes evidence involving the defendant's sexual misconduct six and ten years prior to the date of the incident giving rise to the instant prosecution. The Court stated that "in considering remoteness the time elapsed between events, while important, is not the sole test to be used." *Id.* at 252. The court concluded that because of the intrafamilial nature and similarity of place of the defendant's misconduct, the evidence of the defendant's prior acts was not too remote in time under the *Engeman* standards. *Id.* at 251.

Likewise, the court in *State v. Walsh*, 318 N.W.2d 184 (Iowa 1982), held that a prior crime which occurred three and one-half years before the current charge was not too remote in time to be relevant. There, the court based its finding partly on the fact that the defendant was confined in prison for some of that time lapse, reducing the "period of opportunity" between the two crimes to a one-year period. The defendant had returned to the same neighborhood to repeat the same plan or pattern of conduct at very nearly his earliest opportunity so to do. The court concluded, "We refuse to say, however, that a one-year period of opportunity between offenses makes Officer Roberts' testimony irrelevant as a matter of law." *Id.* at 187–88.

 In the case at hand, the time lapse between the two crimes was four years and eight months. However, during some of that period Coen was in prison. Thus, the period of opportunity between the two crimes becomes about one year.

We follow the holdings of *Maestas* and *Walsh* to conclude that the prior incident involving Karen Butler was not too remote in time to be relevant. The trial court did not abuse its discretion by finding that Butler's testimony was relevant to prove

Coen's intent to commit sexual abuse against Natalie Weaver.

Nevertheless, Coen asserts that we are bound by the Iowa Supreme Court's ruling in *State v. Walters*, 45 Iowa 389 (1877), to exclude Butler's testimony as to the issue of intent. The court there held that evidence of assaults upon the prosecutrix made before the one for which the defendant was tried was admissible to show intent, but evidence of assaults made upon another person several years earlier were not admissible to establish the scienter or quo animo. *Id.* at 389–90. The court concluded that it was error to allow the latter evidence because it did not directly tend to prove any matter in issue and had no connection with the crime charged. *Id.*

The *Walters* opinion does not indicate any similarity between the assault charged and the prior assault upon another victim offered in evidence. Also the element of intent was already established by testimony of the victim. In the case at bar, intent is a necessary element of the crime charged and is a matter in issue. The evidence of Coen's prior offense is offered solely to show intent and not to establish Coen's guilty knowledge or motive. Moreover, the requisite connection exists between Coen's prior crime and the offense now charged because of the similarity of the two.

This decision comports with the trend of the law regarding the admissibility of other-crimes evidence. Dean Wigmore has summarized the standard for admissibility of other-crimes evidence on the issue of intent in the sexual assault context as follows:

> Where the charge is assault with intent, the propriety of such evidence cannot be doubted. There should be some limitation of time, but merely to avoid the objection of unfair surprise (§ 194 supra). There need be no limitation as to the person assaulted, because the only purpose is to negative any other than the rape intent, and a previous rape assault on another woman has equal probative value for that purpose, for it is a general

desire to satisfy lust that is involved in this crime, and no particular woman is essential for this. Accordingly, where the charge is assault with intent, former acts of the sort should be received without any limitation except as to the time; though the courts can hardly be said to have accepted this result fully.

2 J. Wigmore, *Wigmore on Evidence* § 357 (Chadbourn rev. 1979). This view is in line with the more recent Iowa case law.

■ **B. Prejudice versus Probative Value.** While we agree with the trial court's conclusion that Karen Butler's testimony is relevant, "we must also decide if trial court abused its discretion in determining whether any danger of unfair prejudice created by the evidence substantially outweighed its probative value." *Cott*, 283 N.W.2d at 329. Coen, as the complaining party, must show that the trial court's action was "unreasonable in the light of attendant circumstances." *Id.* Factors to be considered in balancing prejudicial effect against probative value include the actual need for other-crimes evidence in the light of the issues and the other evidence available to prosecution, the convincingness of the evidence that the other crimes were committed and that the accused was the actor, and the strength or weakness of the other-crimes evidence in supporting the issue, and on the other, the degree to which the jury will probably be roused by the evidence to overmastering hostility. McCormick, *Handbook of the Law of Evidence* § 190 (2d ed. 1972).

Coen contends that the admission of Butler's testimony is prejudicial because of an alleged paucity of other evidence of his guilt. Specifically, Coen argues that without Butler's testimony, there is no other evidence suggesting an intent to commit sexual abuse. While true, this contention was silenced by the court in *Cott* stating that "a lack of other relevant evidence may in some instances increase the probative value of the evidence available." *Cott*, 283 N.W.2d at 329. We find that the lack of other evidence of Coen's intent enhances

the probative value of Butler's testimony in this case.

Furthermore, Coen's culpability was clearly shown with regard to the Butler incident. Coen was convicted of sexual abuse in the second degree for this previous incident. *See Cott,* 283 N.W.2d at 329. In addition, we note once again the high probative value of Butler's testimony on the issue of Coen's intent because of the similarity of the prior crime to the crime now charged.

To be weighed against these indicia of probative value are the possibilities for prejudice inherent in admitting evidence of a prior offense. The primary danger with which we are concerned is the over-strong tendency to believe that the accused is guilty of the current charge against him merely because he is a man of criminal character. *McCormick* at 447.

Generally, cautionary or limiting instructions will be sufficient to remove the danger of prejudice from the admission of other-crimes evidence. *Conner,* 314 N.W.2d at 429. Here, the trial court gave the jury a cautionary instruction explaining the limited purpose for which the evidence of Coen's previous conviction could be considered. This is not the extreme case referred to in *Conner* where such a limiting instruction would be insufficient to remove the danger of prejudice.

We believe that the probative value of Butler's testimony outweighs the possibility of prejudice to Coen. We conclude that the trial court's ruling to admit Butler's testimony cannot be termed unreasonable in light of the attendant circumstances or an abuse of discretion.

■ **II. Kidnapping Confinement.** At the conclusion of the State's evidence, Coen unsuccessfully moved for a directed verdict on the ground of insufficiency of the evidence. Coen now contends that the trial court's denial of his motion constituted error because the evidence was not sufficient to prove the kidnapping charge. In reviewing the propriety of a trial court's ruling on a motion for a directed verdict in a criminal

case, we view the evidence in a light most favorable to the State. *State v. Rich,* 305 N.W.2d 739, 741 (Iowa 1981).

All legitimate inferences that may reasonably be deducted therefrom will be accepted. *State v. Schrier,* 300 N.W.2d 305, 306 (Iowa 1981). All of the evidence must be considered when determining evidentiary sufficiency. *State v. Robinson,* 288 N.W.2d 337, 340 (Iowa 1980). A trial court should submit a charged crime to the jury and should not direct a verdict, and a refusal to direct a verdict will be upheld, if there is any substantial evidence in the record reasonably tending to support the charge. *State v. York,* 256 N.W.2d 922, 927 (Iowa 1977); *State v. Overstreet,* 243 N.W.2d 880, 884 (Iowa 1976). Substantial evidence means such evidence as could convince a rational trier of fact that the defendant is guilty of the crime charged beyond a reasonable doubt. *State v. Robinson,* 288 N.W.2d at 339.

Iowa Code section 710.1 (1983) defines kidnapping as follows:

A person commits kidnapping when he or she either confines a person or removes a person from one place to another, knowing that he or she has neither the authority nor the consent of the other to do so; provided, that to constitute kidnapping the act must be accompanied by one or more of the following:

\* \* \* \* \* \*

3. The intent to inflict serious injury upon such person or to subject the person to a sexual abuse.

Under this section, a defendant must confine or remove a person as one element of the offense. The jury in this case was given Iowa Uniform Jury Instruction No. 1007 which defines confinement as follows:

A person is "confined" when his freedom to move about is substantially restricted by force, threat or *deception.* He may be confined either in the place where the restriction commences or in a place to which he has been removed. The confinement need not exist for any particular length of time, as long as it is for the

purpose of restricting the person's freedom to move about. (emphasis added) *See also* Iowa Code § 710.7 (1985) ("A person is confined when the person's freedom to move about is substantially restricted by force, threat, or deception.") Coen contends that the confinement or removal contemplated by the statute requires a greater restraint than what is involved in this situation.

The Iowa Supreme Court in *Rich* determined that the terms "confines" and "removes" require more than the confinement or removal that is an inherent incident of commission of the crime of sexual abuse. The Court concluded:

Although no minimum period of confinement or distance of removal is required for conviction of kidnapping, the confinement or removal must definitely exceed that normally incidental to the commission of sexual abuse. Such confinement or removal must be more than slight, inconsequential, or an incident inherent in the crime of sexual abuse so that it has a significance independent from sexual abuse. Such confinement or removal may exist because it substantially increases the risk of harm to the victim, significantly lessens the risk of detection, or significantly facilitates escape following the consummation of the offense. ... Although the plain language of section 710.1 appears to encompass the usual case of sexual abuse, in which some movement or confinement occurs, a literal interpretation of the statutory language would not be sensible or just. We therefore believe that because of the substantial disparity between sentences the legislature intended the kidnapping statute to be applicable only to those situations in which confinement or removal definitely exceeds that which is merely incidental to the commission of sexual abuse.

*Rich*, 305 N.W.2d at 745.

The court has confronted the problem of whether confinement or removal is enough to substantiate a kidnapping charge on several occasions, and our present task is to fit this case into the pattern of those decisions.

*State v. Holderness*, 301 N.W.2d 733 (Iowa 1981), involved the following factual situation:

On August 26, 1978, a ten-year-old girl was abducted while in a Davenport cemetery. After luring the girl from her bicycle to his car, the assailant choked her, partially removed her pants and "did some things" to her which she could not remember. The assailant also struck her on the head several times with both a club and his fist. Following this episode, he transported the victim out into the country, where she was subjected to various incidents of sexual abuse while still confined in the assailant's car. She was later released when he returned her to the cemetery.

301 N.W.2d at 736. The court held:

The victim was transported by automobile a distance several miles, from Davenport out into the countryside. This demonstrates the movement was calculated to detain her in isolation and secret, and was not only a means to facilitate the commission of sexual acts. Moreover, the asportation from the city to the country removed the victim to a more isolated area, thus decreasing the likelihood of any passersby coming upon the scene. The distance over which she was transported, along with the length of the detention (approximately two hours) further bolster our conclusion that the confinement and removal substantially increased the risk of harm to this victim. We believe the facts and circumstances of this case are sufficient to support the conclusion that the confinement and movement involved were not merely incidental to the crime of sexual abuse, and that the offense of kidnapping was amply established.

*Id.* at 740.

In *Rich*, the victim managed a clothing store which she left after the shopping center was closed. When she summoned the custodian to let her out of the building, the defendant directed her to an exit, then

grabbed her from behind, held a sharp object to her back and told her she would not get hurt if she did as told, led her to the men's restroom, forced her to lie on her stomach, tied her hands behind her back, and sexually abused her. He then led her around the shopping center, laid her on her back and tied her legs to a bannister with her brassiere and a rag, later untied her legs, put her in a three-wheeled trash container and covered her with trash, wheeled her to a utility shed, left, returned, tied her feet, subsequently wheeled her into the mall area again, and departed.

The court held that:

Defendant's movement of the victim the short distance from the mall into the restroom in and of itself was not sufficient confinement or removal within the meaning of section 710.1. There are other factors, however, that indicate that the removal and confinement in this case substantially exceeded that which is incidental to the commission of sexual abuse.

First, although the doors to the shopping center were locked, defendant looked into the restroom to ensure further privacy. Pictures introduced as exhibits show that defendant did not choose the restroom for his sexual assault for the personal comfort of himself or his victim. Rather, his actions indicate that he sought the seclusion of the restroom as a means of avoiding detection. Secondly, the binding of the victim's hands behind her back was not necessary to the commission of the sexual abuse and is not a normal incident of the offense.

Defendant's activities subsequent to the consummation of the sexual abuse are also significant. ... [D]efendant's continued confinement and movement of the victim were a continuation of the commission of the sexual abuse and so intertwined with that offense as to come within the contemplation of sections 711.-1-.2....

Considering the totality of the facts, there was substantial evidence to support the kidnapping charge, and a jury question was engendered.

*Id.* at 745–746.

The factual situation in *State v. Knupp,* 310 N.W.2d 179 (Iowa 1981), includes the following:

In her high heels she had trouble traversing the icy Mississippi River bridge and accepted a ride with defendant. She left his car at the tollbooth and resumed walking.

Defendant returned, stopped his car about five feet from the curb, opened the passenger door, and again asked the victim if she wanted a ride. She stepped into the street to answer the defendant, put her right hand on the car roof, and told defendant he was a "nice guy" but she did not want a ride. Defendant seized the victim's arm, pulled her into the car, and drove away. Apparently no one heard the victim's scream. Defendant told her he just wanted to make sure she got home safely. When he asked where she lived she replied that he could let her out at the Benson Lumber Company. During this travel the victim told defendant she had quarreled with her husband and that she was pregnant. She later characterized her reaction as "scared" and "babbling."

Defendant drove six or seven blocks toward the lumber company, but turned in at the Yetter Oil Company parking lot and stopped under an overpass bridge. The victim got out of the car. In the ensuing ten-minute struggle, defendant punched her in the stomach several times and she was shoved back into the front seat. As a preliminary to a resulting sex act defendant produced a knife and used it to cut through her body suit.

After the sex act the victim put on her blue jeans and walked the short distance to her home.

310 N.W.2d at 181. The court held:

Applying the criteria we have identified in our opinions as aiding in the resolution of the removal issue, we hold this confinement and removal was kidnapping within section 710.1. Defendant's ac-

tions substantially exceeded that which could have been considered merely incidental to the sexual abuse, substantially increased the risk of harm to the victim, and significantly lessened the risk of detection.

*Id.* at 183.

In *State v. Marr,* 316 N.W.2d 176 (Iowa 1982), the facts were the following:

The victim had left her apartment house around 10:00 p.m. to walk to a nearby drug store. Upon leaving the store, she noticed a man—whom she later identified as the defendant—sitting in a car and staring at her. While walking back to her apartment she heard a car door slam and observed the defendant following her at a distance of fifty feet. She picked up her pace, and he began to run after her; when she began to run too, he yelled "Hey wait a minute," and she stopped and turned around to face him. She screamed and he clamped his hand over her mouth, threatening her "not to scream, or [she] would never scream again." At this point the two were on the sidewalk directly in front of the victim's apartment house, which abutted the sidewalk. The defendant slammed her against the corner of the building, and then shoved her down to the ground around the side of the building; some ten to fifteen feet into a gangway separating it from a neighboring house. One of her arms was pinned under her back, allowing the defendant to lift her shirt, pull down her pants, and sexually abuse her.

*Id.* at 177. The court concluded that "the State failed to sustain its burden of proof under the kidnapping charge that the confinement or removal definitely exceeded that normally incidental to the commission of sexual abuse." *Id.* at 180.

In *State v. Mead,* 318 N.W.2d 440 (Iowa 1982), the victim and her daughter returned home and the defendant stepped out of their entrance porch. He grabbed the victim from the back, held a knife to her throat and said, "This woman is dead." The victim freed herself and ran for help.

The court held:

[U]nless we extend kidnapping to nearly any case involving a seizure by a defendant of another person during the commission of a crime, which we refuse to do, the instant case does not involve sufficient confinement to constitute kidnapping....

We are impressed by the distinction between "seizure" and "detention" (which the court equated to confinement) drawn by the court in *Hardie v. State,* 140 Tex.Cr. 368, 377, 144 S.W.2d 571, 575 (1940). The present case involves a seizure of Mrs. Zamora by defendant, not a confinement of her. Under the statute, kidnapping cannot be predicated on merely "seizing" another person. The trial court should have dismissed the kidnapping count.

*Id.* at 445.

In *State v. Newman,* 326 N.W.2d 796 (Iowa 1982), a seventh-grade student had walked to a friend's house after school. About 8:00 p.m., during her walk home, defendant pulled up beside her in a pickup truck and held out a star-shaped badge. He told her he was a police officer looking for drugs, called her over to the pickup, and asked her to get in. Driving on, defendant told the girl to lift up her shirt and brassiere so that he could see whether she was carrying drugs there; she complied. Defendant told the girl to pull down her pants, and she started to do so but stopped. Continuing his masquerade as a policeman, defendant told her he would take her to the police station, and she asked to be taken there. Defendant did not take the girl to the police station but sexually abused her numerous times while driving down an isolated road. Defendant released the girl near the place he picked her up.

The court concluded that these facts were considerably closer to those in its decisions upholding kidnapping convictions than those reversing convictions.

Defendant's acts in enticing the girl into a vehicle, continued driving, and taking her onto Prospect Road which is unoccupied by dwellings, substantially exceed those as in *Marr* and *Mead.* His acts

were not merely incidental to sexual abuse; they also increased the risk of harm to the girl and they lessened the risk of detection. We hold that substantial evidentiary support exists for the jury's finding of kidnapping.

*Id.* at 801–802.

In *State v. Folck*, 325 N.W.2d 368 (Iowa 1982), the defendant and his half-brother offered two female hitchhikers a ride. The four drove around for two hours stopping at bars. At one stop the defendant purchased beer, then turned the car away from the city and drove down a secluded gravel road between two corn fields. When the two women asked to be let out, the defendant swore at them, stopped the car, grabbed one around the neck, and sexually abused her. The defendant then drove the women back to town and dropped them off.

The court acknowledged that up until the time the defendant drove away from the city, the association of the four was entirely voluntary. If kidnapping occurred, it was after that time. *Id.* at 370. The court concluded as follows:

> We hold there was a jury question on the issue. The confinement of the complaining witness extended over a period of several hours. She was taken to a secluded spot where detection was unlikely. The remoteness of the place where the attack took place substantially increased the risk of harm if she sought to defend herself or to escape. This was not the type of confinement or removal which is merely incidental to the act of sexual abuse.

*Id.* at 370–71.

*State v. Ristau*, 340 N.W.2d 273 (Iowa 1983), involved the following factual situation:

> After an evening of drinking, Ristau and Dennis Orr met the female victim at a bar in East Dubuque in the early morning hours of August 8, 1981. Arrangements were made for her to ride back to Dubuque in the pickup truck that defendant was driving. The woman sat between Ristau and Orr. When the parties reached Dubuque, the defendant ignored the woman's request to turn right and instead turned left away from her home. As they proceeded in the opposite direction, she objected and stated she wanted to go home. Defendant did not respond. Instead, he drove over gravel roads to the Julien Dubuque Memorial. Once there, the woman testified that she was forced to perform sexual acts with Orr and Ristau. These acts terminated when a police officer arrived on the scene.

*Id.* at 274.

The court reasoned to its conclusion regarding the sufficiency of the evidence of confinement as follows:

> Defendant next claims his motion for a directed verdict should have been sustained since there was insufficient proof of confinement. He maintains the victim voluntarily entered the vehicle and was not restrained until the assault took place. He urges that any confinement was merely incidental to the underlying sexual abuse and will not support a kidnapping conviction....
>
> Reviewing the evidence in the light most favorable to the State, we hold there was a jury question on this issue. Complainant's entry into the pickup truck was consensual; however, defendant's subsequent deviation from the route was objected to on several occasions. Complainant was forced to smoke a marijuana cigarette while she was en route. She was taken over two miles from the initial improper turnoff to a dark and secluded place and then attacked at a spot 60 to 70 feet away from the parking lot and sidewalk. Given these facts, a jury properly could conclude her consent was terminated when the defendant intentionally turned away from the route to the complainant's home. The defendant's movement of the victim to a secluded place exceeded the confinement or removal that is inherent in the commission of the crime of sexual abuse. His action indicates he sought seclusion as a means of avoiding detection. The remoteness of

the location where the attack took place substantially increased the risk of harm to the victim if she attempted to defend herself or escape. The victim was unfamiliar with the area, and the testimony of a peace officer indicates there was a cliff nearby. The evidence of confinement and removal falls within the contemplation of section 710.1 and supports the kidnapping conviction.

*Id.* at 275–76.

In *State v. Hardin,* 359 N.W.2d 185 (Iowa 1984), the facts were these:

At approximately 1:30 a.m. on the morning of September 29, 1983, the adult female victim gave defendant a ride from a local bar to his residence. When the car stopped in front of his house, defendant hit the victim in the face, dragged her out of the vehicle, and forced her inside where he raped her. Defendant then allowed the victim to leave.

*Id.* at 187. After reaffirming its analysis of the kidnapping statute in *Rich,* the court concluded that there was adequate record support for submitting the kidnapping charge to the jury.

[T]he jury could have found beyond a reasonable doubt that defendant assaulted the victim in her car, then dragged her out of the car and forced her into his residence where his actions would be less detectable and where he might batter her at will. In the house the risk of detection would be less likely, the risk of harm to the victim more likely.

*Id.* at 190.

The present facts on confinement and removal are closer to those in the decisions where the supreme court upheld kidnapping convictions than those reversing kidnapping convictions.

From the evidence presented at trial, the jury could reasonably conclude that Coen found Natalie Weaver in a public parking lot, incapacitated her car, gained her confidence by changing her tire, entered her car by deceiving her into believing that she was giving him a ride home, and directed her to drive into a warehouse district unlighted by streetlights near midnight.

What makes this situation distinctive is the fact that Coen did not initially confine or remove Natalie by physical force or threat, but rather by deception. Coen's deceptive ploy and the resultant transport of Natalie was not merely movement incidental to sexual abuse. Coen selected the location for perpetration of the crime which was in the immediate vicinity where he sexually abused Karen Butler after threatening her with a knife. A jury could infer he selected the ultimate destination because it was remote and without street lights. A jury could further conclude that Coen waited until they reached this remote location because he could there sexually abuse Natalie without detection. Removing Natalie from a public environment to an isolated area also increased the risk of harm to Natalie.

We recognize that in these circumstances the length of confinement and distance traversed were not extreme; however, the fact that Natalie was adroitly able to abort Coen's scheme does not change the nature of the confinement or removal. Iowa's kidnapping statute does not require confinement or removal to be substantial or forcible, and a conviction for kidnapping in the third degree does not require injury to the victim. The harm the kidnapping statute is designed to prevent is the removal of a victim from one place to another with attendant increased risks to the victim.

We conclude that substantial evidentiary support exists for the jury's finding of kidnapping in the third degree.

AFFIRMED.