STATE of Iowa, Plaintiff–Appellee,

v.

Mark Aaron DELANEY, Defendant–Appellant.

No. 93–0262.

Court of Appeals of Iowa.

Oct. 25, 1994.

Linda Del Gallo, State Appellate Defender, and Rachele Braverman Hjelmaas, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Robert P. Ewald, Asst. Atty. Gen., Steve St. Clair, Sp. Asst. Atty. Gen., and John P. Sarcone, County Atty., for appellee.

Heard by SACKETT, P.J., and HABHAB and CADY, JJ.

CADY, Judge.

This is an appeal by Mark Delaney following judgment and sentencing on four counts of first-degree theft by deception, and four counts of second-degree theft by deception. He claims the charges should have been severed for trial, the court improperly admitted testimony at trial concerning prior uncharged crimes, and insufficient evidence supported the charges. He further argues defects in sentencing, and alleges ineffective assistance of counsel. We affirm the conviction, vacate the sentence, and remand for resentencing. We preserve the claim of ineffective assistance of counsel.

Delaney was a salesman for a Des Moines business called Wizard Security Company. The company was owned by a friend and business associate Robert Wood. From 1988 to 1990, Delaney befriended three women, with the cooperation of Wood. The women were first approached to purchase home security systems and other home products. Two of the women, Maude Nelson and Eleanor Hornback, were widows and lived alone. Nelson was 89 years old. Hornback was 72 years old. The third woman, Doris Borts, lived with her husband who was in poor health. She was 68 years old. After spending a considerable amount of time with the women, Delaney began asking them for a series of loans for business and personal purposes. The women ultimately gave Delaney over $100,000. Although Delaney usually executed promissory notes in connection with the transactions and even pledged collateral at times, the money was never repaid. The collateral had little or no value, and Delaney eventually discontinued the frequent social visits.

The state charged Delaney with eight counts of theft by deception. Each count involved a separate transaction, summarized as follows:

Count 1: $35,000 from Nelson on 6–28–89

Count 2: $20,000 from Nelson on 9–5–89

Count 3: $5,000 from Nelson on 10–20–89

Count 4: $8,500 from Hornback on 4–11–90

Count 5: $2,500 from Hornback on 4–24–90

Count 6: $2,500 from Hornback on 4–27–90

Count 7: $3,750 from Hornback on 4–30–90

Count 8: $25,000 from Hornback on 5–25–90

Charges involving Borts were not filed but she was named as a prosecution witness. Prior to trial, the district court denied Delaney's motion to sever the first three counts from the last five counts. Delaney also filed a motion in limine to prohibit the state from introducing the testimony of Borts' concerning her dealings with Delaney and Wood in 1988. The court denied the motion with the exception of testimony from Borts' relating to a check written by Delaney on a closed account.

The case was tried to a jury. Nelson and Hornback testified about their friendship with Delaney, their loans to Delaney and that they had not been repaid. Nelson and Hornback indicated they liked Delaney and did not initiate the criminal proceedings. Testimony was introduced that Wood received some of the money from Nelson and Hornback. Borts was allowed to testify that she gave Delaney $7500 and received no money from Delaney in return. Delaney testified he had no intent to defraud the women. He testified the money he borrowed was for Wizard Security Systems or for Wood, and part of the money he received was in compensation for working for Wood. He believed Wood had paid the women back. Delaney was convicted as charged.

The sentencing hearing was continued in order for the State to investigate whether Delaney was involved in deceptive conduct directed at other elderly persons. The State informed Delaney of witnesses it intended to present at the sentencing hearing. Several witnesses testified at the sentencing hearing without objection about their dealings with Delaney, although most knew him by a different name. The district court sentenced Delaney to ten-year terms of incarceration on counts one, two, four and eight and to five-year terms of incarceration on counts three, five, six and seven. The sentences were ordered to run consecutively.

Delaney appeals. He contends the district court erred in refusing to sever the charges and in allowing Borts to testify. He also contends there was insufficient evidence he intended to defraud Nelson and Hornback to support the convictions. Delaney further claims the district court failed to state adequate reasons for imposing consecutive sentences. Delaney points out, and the State concedes, he was improperly sentenced on count four. Finally, Delaney argues that trial counsel was ineffective in failing to object to the witnesses presented at sentencing and to actions of persons in the courtroom during sentencing. He asks that these claims be preserved for postconviction relief.

## I. Severance of Charges

■ We review the trial court's refusal to sever charges on an abuse of discretion standard. *State v. Geier*, 484 N.W.2d 167, 172 (Iowa 1992). We respect the superior vantage point of the trial court and recognize that judicial decisions are infrequently resolved within sharp confines.

■ Our law permits multiple charges arising from multiple transactions or occurrences constituting parts of a "common scheme or plan" to be prosecuted in a single trial unless the trial court determines otherwise for good cause shown. Iowa R.Crim.P. 6(1). Delaney argues his alleged crimes did not constitute a common scheme or plan, and the trial court abused its discretion in failing to grant a severance.

■ A "common scheme or plan" requires more than the commission of two similar crimes by a single person. *State v. Wright*, 191 N.W.2d 638, 641 (Iowa 1971). The crimes must have a common link. *Id.* Many factors have been developed to help determine the existence of a "common scheme or plan," including modus operandi, continuing motive, and temporal and geographic proximity. *State v. Lam*, 391 N.W.2d 245, 249–50 (Iowa 1986).

In applying the relevant factors to this case, we are driven to conclude the charges constituted parts of a "common scheme or plan." Although the eight loan transactions covered an eleven month period, the money was obtained by similar bewitching methods,

accompanied by a continuing self-indulgent motive. The victims also resided in the same community.

 We also conclude the trial court did not abuse its discretion in refusing to sever the charges. In reviewing the trial court's decision, we balance any unfair prejudice which could result from a joint trial against the state's interest in judicial economy. *State v. Trudo,* 253 N.W.2d 101, 104 (Iowa 1977), *cert. denied,* 434 U.S. 903, 98 S.Ct. 299, 54 L.Ed.2d 189 (1977). The burden of proof rests with the defendant. *Id.*

Here, the circumstances surrounding the eight charges were linked by a common motive and scheme. This link would have supported the admission of evidence of all the charges under Iowa Rule of Evid. 404(b) even if the charges would have been severed. *See State v. Johnson,* 237 N.W.2d 819, 822 (Iowa 1976). Furthermore, the court instructed the jury to determine Delaney's guilt or innocence "separately on each count." *See State v. Simpson,* 438 N.W.2d 20, 21 (Iowa App.1989) (explaining that the jury is presumed to follow it's instructions). We conclude the trial court did not abuse its discretion in refusing to separate the charges for trial.

## II. Evidence of Other Crimes

 It is a recognized rule that evidence of one crime cannot be used to prove another crime. *State v. Cott,* 283 N.W.2d 324, 326 (Iowa 1979). The principle serves to exclude evidence from trial which is only relevant to show the accused is a bad person and worthy of conviction of the crime charged. *Id.* This rule, however, does not exclude all evidence of other crimes. Evidence of other crimes or bad acts is admissible when relevant to issues other than the criminal disposition of the accused. *Id.*

Iowa Rule of Evidence 404(b) codifies the general rule of exclusion, as well as the exception. It specifically allows evidence of other crimes or wrongs to be admitted at trial if offered for such purposes as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Iowa R.Evid. 404(b).

Like other rules of evidence, Rule 404(b) is constrained by Rule 403. Even if evidence of a prior crime is admissible under the spectrum of relevance of Rule 404(b), it must nevertheless be excluded if its probative value is substantially out weighed by the dangers of unfair prejudice. Iowa R.Evid. 403; *State v. Plaster,* 424 N.W.2d 226, 231 (Iowa 1988).

 Evidence is relevant if it has a tendency to make the existence of any material fact more probable or less probable than it would be without ' the evidence. Iowa R.Evid. 401; *See United States v. Schipani,* 289 F.Supp. 43, 56 (E.D.N.Y.1968) (holding that evidence is irrelevant if no reasonable person would have his or her assessment of the probabilities of a material proposition changed by the particular evidence). The "probative value" of evidence gauges the strength and force of that tendency. *Plaster,* 424 N.W.2d at 231.

 In considering the presence of prejudice, our focus is on unfair prejudice. *State v. Coen,* 382 N.W.2d 703, 707 (Iowa App.1985). Relevant evidence is inherently prejudicial in the sense of being detrimental to the opposing party's case. *Carter v. Hewitt,* 617 F.2d 961, 972 (3rd Cir.1980). We look beyond this type of inherent prejudice to whether the evidence has an undue tendency to suggest a decision on an improper basis, appeals to the sympathies of the jury, or otherwise might cause the jury to base their decision on something other than the relevant legal propositions. *Id.; See* Fed. R.Evid. 403, advisory committee note ("[u]nfair prejudice" means "an undue tendency to suggest decisions on an improper basis, commonly though not necessarily, an emotional one.")

 Factors to consider in balancing the prejudicial effects against the probative value include 1) the actual need for the evidence in view of the issues and other available evidence, 2) the strength of the evidence showing the other acts or crimes were committed by the accused, 3) the strength or weakness of the other crimes evidence supporting the issue, and 4) the degree to which the jury will probably be roused by the evi-

dence and use it improperly. *Coen,* 382 N.W.2d at 707. The complaining party must show the trial court's decision was unreasonable under the attendant circumstances. *Id.* We review under an abuse of discretion standard. *State v. Casady,* 491 N.W.2d 782, 785 (Iowa 1992).

The testimony of Carol Borts was relevant to the issues of intent, plan and knowledge. The circumstances surrounding the transaction involving Borts paralleled the circumstances surrounding the Nelson and Hornback transactions. Each transaction involved elderly women, who were first approached to purchase a home security system. In each instance, the initial contact was followed by numerous unsolicited visits to the women. Eventually, in each situation, Delaney asked the women for loans for various exigent personal or business reasons. The money, however, was never used for the professed purpose. Little, if any, of the money was repaid in each case, and Delaney terminated contact with the women soon after the loans were made. The Borts' transaction was related in time to the transactions involving Nelson and Hornback.

It is important to recognize the state was required to prove Delaney knowingly deceived his victims.[1] This was a paramount issue at trial, and the string of similarities between the Borts' transactions and the transactions subject to prosecution clearly made the Borts' evidence relevant to issues other than the general criminal disposition of the accused.

We also conclude the probative value of the Borts' testimony outweighed the danger of unfair prejudice. The Borts' testimony was circumstantial evidence of Delaney's intention not to repay Nelson and Hornback. The State had a clear need for the evidence. The testimony provided by Borts' also convincingly established the prior crime or acts were committed by Delaney. Furthermore, the similarities between the Borts' transaction and those prosecuted at trial strengthened the relevance of Borts'

testimony on the issue of intent to repay. Finally, the Borts' testimony was not inflammatory in light of the nature of the trial. The prior uncharged crime or bad act did not involve conduct more sensational or disturbing than the crimes prosecuted. *United States v. Roldan–Zapata,* 916 F.2d 795, 804 (2nd Cir.1990), *cert. denied,* 499 U.S. 940, 111 S.Ct. 1397, 113 L.Ed.2d 453 (1991). Moreover, the court instructed the jury on the limited use of the Borts' testimony. This type of instruction helps nullify the danger of unfair prejudice. *State v. Conner,* 314 N.W.2d 427, 429 (Iowa 1982).

### III. Motion for Mistrial

The court partially granted Delaney's pretrial motion in limine to exclude evidence that Delaney gave Borts a check on a closed account for $2,500 in partial repayment of a $7,500 loan. On direct examination of Borts by the State, the following exchange took place:

Q. Now, was there any discussion about paying any interest on the loan or— A. No. No.

Q. Was it no interest? A. No interest. Nothing was said about it.

Q. Okay. Did Mr. Delaney repay any of the $7,500 loan? A. He gave a check for $2,500.

Q. Well, pardon me. Did Mr. Delaney actually pay any of the—Did you receive any money from Mr. Delaney? A. No money.

Q. Okay. Thank you. And you didn't receive any other kind of property from Mr. Delaney? A. No.

Q. Okay. Would it be correct to say that you never received any repayment from Mr. Delaney on the loan? A. No money.

Q. Okay. Now, did anyone else pay off any part of the loan? A. Yes.

Q. What was that? A. Wood did.

Q. And do you recall how much? A. A thousand dollars.

---

1. Iowa Code section 714.1(3) (1991) provides that theft by deception is committed when a person "obtains ... a transfer of possession, control, or ownership of property of another ...

by deception." "Deception" is defined under section 702.9(5) to include "knowingly ... promising payment ... which the actor does not intend to perform...."

Delaney did not object to the testimony at the time it was offered. Instead, after Borts completed her testimony and after the State rested, Delaney moved for a mistrial, claiming the State violated the ruling on the motion in limine when it introduced evidence that Delaney gave Borts a $2,500 check in repayment of the loan, but never actually received any money from Delaney.

 It is generally recognized that a motion in limine does not preserve error since error does not occur until the matter is presented at trial. *State v. Harlow*, 325 N.W.2d 90, 91 (Iowa 1982). An objection should be made at trial to preserve error. *Id.* This rule, however, has an exception. A defendant is not required to object at trial if the prior ruling on the motion in limine "amounts to an unequivocal holding concerning the issue raised." *Id.*

In this case, the thrust of the motion in limine was to exclude all testimony by Delaney. The hearing on the motion was not reported. The trial court told counsel that the Borts testimony would be allowed with the exception of the check written by Borts on a closed account, unless Delaney invited such evidence. Delaney believes the evidence offered by the State violated the spirit of the ruling.

We believe the circumstances presented did not fall within the exception to general rule. The ruling excluding evidence of a bad check was not an unequivocal holding, and whether the evidence offered by the State fell within the parameters of the ruling was uncertain. The ruling did not preclude the State from eliciting evidence that Delaney never repaid the loan, only that Delaney gave Borts a check written on a closed account. Under the circumstances, Delaney should have objected during the questioning to preserve the error now claimed on appeal. This would have allowed the trial judge the opportunity to consider whether the evidence fell within the pretrial ruling and, if so, to structure a remedy. *See State v. Burrell*, 255 N.W.2d 119, 122 (Iowa 1977).

 Notwithstanding, we review the trial court's denial of a motion for mistrial on an abuse of discretion standard. *State v. Brown*, 397 N.W.2d 689, 699 (Iowa 1986). We find no abuse of discretion. We have considered all grounds urged by Delaney and find the trial court did not err in the admission of the Borts testimony.

## IV. Motion for Judgment of Acquittal

 We employ a "substantial evidence" test in our review of the denial of a motion for judgment of acquittal based on a claim of insufficient evidence. *State v. Schrier*, 300 N.W.2d 305, 306 (Iowa 1981). In doing so, all the evidence is examined in a light most favorable to the State, and we accept all legitimate inferences reasonably arising from the evidence. *State v. Knupp*, 310 N.W.2d 179, 182 (Iowa 1981). The ruling by the trial court will be upheld if there is substantial evidence reasonably tending to support it. *Id.* Evidence which raises only suspicion, speculation, or conjecture is insufficient. *State v. LaPointe*, 418 N.W.2d 49, 51 (Iowa 1988).

Theft by deception is committed when a person, *inter alia*, obtains the transfer of possession, control, or ownership of property of another by deception. Iowa Code § 714.1(3) (1991). Deception includes knowingly promising payment or other performance which the accused does not intend to perform or knows will not be able to perform.[2] Iowa Code § 702.9 (1991).

---

**2.** The trial court instructed the jury that Delaney must have "intended to deceive" the victims at the time he participated in obtaining the loans. It then instructed the jury on the relevant definitions of deception under Iowa Code Section 702.9. Neither party challenged the specific intent element on appeal, and it is unnecessary for us to specifically decide whether theft by false pretenses or deception remains a specific intent crime following the 1978 revisions in our criminal code. We observe that specific intent to deceive was an essential element of the former crime of obtaining property by false pretense. *State v. Comes*, 245 Iowa 485, 491, 62 N.W.2d 753, 756 (Iowa 1954). The former statute used the phrase "intent to defraud" to define false pretenses. *See* Iowa Code § 713.1 (1977). The new criminal code defines deception as "knowingly" doing one of numerous prohibited acts. Iowa Code § 702.9. We have previously recognized that in criminal law the term "knowingly" has no fixed or precise meaning, and may not necessarily impose a specific intent element. *State v. Winders*, 366 N.W.2d 193, 195 (Iowa

Delaney argues there was insufficient evidence of his criminal intent to deceive the victims in obtaining the money from them. He asserts the evidence confirms the money was obtained as loans for business purposes. Our review of the record, however, clearly supports the inference that Delaney obtained the money by knowingly promising payment which he did not intend to make. The record reveals Delaney never used the money for its stated purpose. The bank records confirmed the money was used, in large part, to purchase personal or luxury items rather than for the business or medical expenses expressed by Delaney. Finally, few, if any, repayments were actually made. We find substantial evidence to support each charge of theft by deception.

### V. Reasons for Sentence

A trial court is required to state on the record its reasons for selecting the particular sentence in a criminal case. Iowa R.Crim.P. 22(3)(d). The explanation does not need to be detailed, but enough must be provided to permit review of the trial court's discretionary action. *State v. Johnson*, 445 N.W.2d 337, 343 (Iowa 1989).

The trial court generally has discretion to impose concurrent or consecutive sentences for convictions on separate counts. *State v. Criswell*, 242 N.W.2d 259, 260 (Iowa 1976); *See* Iowa Code section 901.8 (1991). Consequently, the duty of a sentencing court to provide an explanation for a sentence includes the reasons for imposing consecutive sentences. *See State v. Harrington*, 349 N.W.2d 758, 763 (Iowa 1984). The reasons, however, are not required to be specifically tied to the imposition of consecutive sentences, but may be found from the particular reasons expressed for the overall sentencing plan. *Johnson*, 445 N.W.2d at 343. Thus, we look to all parts of the record to find the supporting reasons. *Id.*

In this case, the sentencing court made the following statement after pronouncing sentences of incarceration on each

separate count: "The court denies probation in this matter because it is unwarranted, and it would unduly lessen the seriousness of the offenses against the defendant."

The sentencing court then informed Delaney of the statutory reduction in the sentence, granted credit for time served, and directed that each sentence to be served consecutively. No further explanation for the sentences was given. In the subsequent sentencing order the trial court included the following statement:

> Granting probation in this case is denied: because it is unwarrented in order to protect the public from further criminal activity by the defendant and would unduly lessen the seriousness of the offenses.

We do not believe the court provided adequate reason for the consecutive sentence. The reasons expressed by the court related solely to the denial of probation. There was no indication from the sentencing colloquy or sentencing order that the reasons for imposing consecutive sentences were tied to the rather generic and brief reasons for denying probation, or were covered by an overall plan of sentencing. *See Johnson*, 445 N.W.2d at 343. In both the sentencing proceeding and sentencing order, the decision to impose consecutive sentences was detached from the decision to deny probation, and was made without further comment or explanation. We believe more is required to enable us to properly perform our review. Accordingly, we remand for resentencing.

### VI. Sentencing Under Amended Statutes

The 1992 amendments to Iowa Code section 714.2 reclassified the degrees of theft and reduced the punishment in some instances. The state concedes Delaney is entitled to the benefits of the reduced punishment for second-degree theft since the amendment occurred prior to his sentencing. *See State v. Austin*, 503 N.W.2d 604, 606 (Iowa 1993). Accordingly, we vacate the sentence on count

---

App.1985). Other subsections defining theft under section 714.1 impose varying degrees of intent. *See Eggman v. Scurr,* 311 N.W.2d 77, 79–81 (Iowa 1981). One of the relevant definitions

of deception in this case, section 702.9(5), clearly requires the actor have no intent to perform the promised repayment.

IV and remand for resentencing under amended section 714.2.[3]

### VII. Unprosecuted Crimes

A sentencing court may consider unprosecuted offenses in imposing sentences only if admitted by the defendant or adequate facts are presented at the sentencing hearing to show the defendant committed the crimes. *State v. Black,* 324 N.W.2d 313, 316 (Iowa 1982).

The evidence presented by the state at the sentencing hearing supplied sufficient facts to show Delaney committed the acts. Accordingly, the evidence was properly before the court for consideration.

### VIII. Disposition

In conclusion, we affirm the conviction and vacate the sentence. The case is remanded for resentencing. We preserve the issue of ineffective assistance of counsel for postconviction relief.

**AFFIRMED IN PART, SENTENCE VACATED, AND REMANDED FOR RESENTENCING.**

---

**3.** The amendments have no effect on the remaining counts because the amount involved qualified as first-degree and second-degree theft under either the old or new code section.