# IN THE COURT OF APPEALS OF IOWA

No. 15-0833
Filed August 17, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DENEM NULL,**
        Defendant-Appellant.

_____


Appeal from the Iowa District Court for Linn County, Ian K. Thornhill,
Judge.


The defendant appeals his sentences following a resentencing hearing.

**SENTENCE VACATED IN PART AND REMANDED.**


Mark C. Meyer, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant
Attorney General, for appellee.


Considered by Potterfield, P.J., and Mullins and McDonald, JJ.

**POTTERFIELD, Presiding Judge.**

Denem Null appeals his sentences following a resentencing hearing. As a minor, Null pled guilty to robbery in the first degree and murder in the second degree. He was originally sentenced to twenty-five years and fifty years, respectively, with the terms ordered to run consecutively and each carrying a seven-tenths mandatory minimum. Following the supreme court's ruling in *State v. Null*, 836 N.W.2d 41, 76–77 (Iowa 2013), Null was resentenced to the same consecutive sentences without the mandatory minimum. On appeal, Null maintains the imposition of the consecutive sentences is an abuse of discretion and cruel and unusual in violation of article 1, section 17 of the Iowa Constitution. He also asks us to interpret Iowa Code section 902.4 (2015), which limits the time period for reconsideration of felony sentences to one year, as not applicable to juvenile offenders.

## I. Background Facts and Proceedings

In February 2010, when he was sixteen years old, Null was charged by trial information with murder in the first degree. The trial information alleged that Null had shot and killed someone during the commission of a robbery. An amended trial information was later filed, which added the charge of robbery in the first degree.

In April 2011, Null pled guilty to murder in the second degree and robbery in the first degree. Null was originally sentenced to a term of incarceration not to exceed fifty years for the murder and a term of incarceration not to exceed twenty-five years for the robbery. The two sentences were to be served consecutively, and each carried a seven-tenths mandatory minimum term.

Null appealed, and the Iowa Supreme Court vacated his sentence and remanded for resentencing.

On February 27, 2015, Null received a resentencing hearing. The court opened the hearing by explaining that it was an opportunity for both sides to supplement the record to show the most appropriate sentence for Null. The court emphasized that it would still consider the evidence from the first sentencing hearing—the presentence investigation report, the victim impact statements, and the statements made by Null—but would be deciding anew the proper sentence. The State presented argument that Null should receive the same sentence as previously ordered but did not offer any new evidence. Null and two of his grandmothers testified on his behalf at the hearing. Additionally, Betsy Wilson, a mitigation specialist, also testified. Wilson testified she spent approximately one hundred hours investigating Null's case and preparing a report regarding his individual circumstances. She interviewed multiple family members and studied school records, medical records, and records from the department of human services's involvement with the family. She testified that Null's almost daily use of marijuana beginning at the age of thirteen "increase[d] impulsivity" and, due to the impact the drug has on a developing brain, Null's "functional age [was] even younger than his chronological age" at the time he committed the murder. Additionally, when asked about characteristics of Null's home life, which was unstable and included a mother who was mentally unwell and engaging in drug use, Wilson opined, "I think those typical characteristics we see generally in young people were even more strongly present in [Null] because of his life history." Wilson also testified that she believed Null's chance for rehabilitation

was "promising" because of his level of intelligence and the educational opportunities he had chosen to undertake while incarcerated, such as completing his GED and enrolling in college courses.

On April 17, 2015, Null was resentenced in open court. The same day, the court filed a written resentencing order. In it, the court listed the following as a summary of Null's mitigation evidence:

> [Null] is currently 23 years old, but was 16 years, 10 months, and 14 days old at the time he shot and killed Kevin Bell. [Null] had a rough childhood. His parents were never married and his father left when [Null] was four (4) years old. [Null] has two younger half-siblings. [Null] was primarily raised by his mother, who has a history of drug and alcohol abuse. [Null]'s mother also worked as a stripper and prostitute. Throughout the course of his childhood, [Null]'s mother brought several of her "boyfriends" into [Null]'s life. Many of these boyfriends were physically abusive to [Null] and [Null]'s mother. Both grandmothers described [Null]'s childhood as difficult and characterized him as being torn between his mother and his father. [Null] did spend periods of time in his father's care. Several Juvenile Court and DHS services were provided to [Null] throughout his childhood. These interventions are thoroughly summarized in the PSIR and [Null]'s Addendum to Sentencing Memorandum filed under seal. While in residential treatment from January 2008 to January 2009, [Null] was sexually abused by a female staff member.
>
> [Null] presented evidence of a history of mental illness in his family, including his own, mostly untreated, mental health issues. [Null] did receive some mental health treatment at age five (5), however, his mother would not allow him to take medication as prescribed.
>
> While incarcerated, [Null] has taken advantage of the programs offered to him, including the completion of his GED. [Null] is also taking college courses and has taken advantage of job opportunities in prison. He has had some discipline problems during his incarceration and transition from county jail to prison, but these incidents were minor. The Court also received evidence of [Null]'s artistic talents.
>
> [Null] testified at the resentencing hearing. In addition to recounting the difficulties with his childhood and the circumstances of his crimes, [Null] described how his incarceration and his continued maturity have affected his attitude. Unlike his original sentencing hearing, [Null] displayed remorse for his crime. He also

acknowledged he needs additional treatment and services, some of which are not available to him in prison at this time due to the structure and length of his prison sentence. [Null] also stated he is not currently on any medication.

[Null]'s mitigation specialist, Ms. Wilson, gave several opinions on how [Null]'s personal characteristics and the circumstances of his life should reduce the amount of punishment imposed by the Court. Ms. Wilson opined that instability in [Null]'s life has made him more susceptible to negative influences. She also opined that the circumstances of his youth have inhibited his ability to succeed in life and that only now, through the structure of the department of corrections, has [Null] been able to display his potential. Ms. Wilson testified that [Null]'s early use of drugs, specifically marijuana, negatively affected his cognitive abilities and was extremely harmful to him. Ms. Wilson also pointed to the fact that [Null] is of "mixed-race" and that this has caused him to have "identity confusion."

The court considered each of the *Miller* factors[1] before resentencing Null to the same consecutive sentences—fifty years for the murder and twenty-five years for the robbery—without a mandatory minimum to be served.

Null appeals.

## II. Standard of Review

We review the district court's sentence for an abuse of discretion. *State v. Hill*, 878 N.W.2d 269, 272 (Iowa 2016). When the challenge to the sentence is based on the constitution, we review de novo. *Null*, 838 N.W.2d at 48.

We review the district court's interpretation of a statute for correction of errors at law. *State v. Johnson*, 770 N.W.2d 814, 819 (Iowa 2009).

## III. Discussion

### A. Consecutive Sentences

Null maintains the district court's decision to re-impose a fifty year and twenty-five year sentence to run consecutively is both an abuse of discretion and

---

[1] *See Miller v. Alabama*, 132 S. Ct. 2455, 2468 (2012).

cruel and unusual punishment. He asserts that a review of the *Miller* factors reveals that consecutive sentences are not warranted, even without a mandatory minimum sentence. Additionally, he maintains the sentencing court abused its discretion by focusing on what the court referred to as the "heinous nature" of the crime and by failing to consider mitigating circumstances such as Null's home life.

We cannot say the sentence ordered by the district court is cruel and unusual or an abuse of its discretion. The district court considered each of the mitigating factors as it was charged to do in *Null*. 836 N.W.2d at 75 (ordering the district court to consider "the typical characteristics of youth, which include immaturity, impetuosity, and poor risk assessment" as mitigating factors, but emphasizing "that while youth is a mitigating factor in sentencing, it is not an excuse"). Additionally, although the court ordered consecutive sentences, it also ordered Null not be subject to any minimum term before becoming eligible for parole. As such, it is clear that Null has received a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Graham v. Florida*, 560 U.S. 48, 75 (2010). Null maintains the sentence he received is too long to survive the prohibition against cruel and unusual punishment, but "juveniles can still be sentenced to long terms of imprisonment, [just] not mandatorily." *State v. Lyle*, 854 N.W.2d 378, 401 (Iowa 2014). "[T]he heart of the constitutional infirmity with the punishment imposed in *Miller* was its mandatory imposition, not the length of the sentence." *Id.* Additionally, judges are not prohibited "from sentencing juveniles to prison for the length of time identified by the legislature for the crime committed . . . ." *Id.* at 403. Sentencing

courts are simply charged with considering the individual circumstances of the specific juvenile to be sentenced before exercising its discretion in doing so. We believe the district court did that here.

However, since Null was resentenced, our supreme court overruled precedent which allowed us to affirm a district court's decision to run sentences consecutively as part of an overall sentencing plan. *See State v. Hill*, 878 N.W.2d 269, 275 (Iowa 2016). Sentencing courts are now required to "explicitly state the reasons for imposing a consecutive sentence, although in doing so the court may rely on the same reasons for imposing a sentence of incarceration." *Id.* Here, the district court simply stated the sentences were to be served consecutively without providing an explanation on either the written or in-court record. Because we no longer may infer that the court ordered consecutive sentences as part of an overall sentencing plan, we vacate the portion of the sentence imposing consecutive sentences. *See id.* ("The rule of law announced in this case . . . shall be applicable to the present case, those cases not finally resolved on direct appeal in which the defendant has raised the issue, and all future cases."); *see also State v. Jason*, 779 N.W.2d 66, 77 (Iowa Ct. App. 2009) ("Here, the trial court provided no explanation for the imposition of consecutive sentences during the sentencing hearing or in the sentencing order. Since the trial court gave sufficient reasons for imposing incarceration, we vacate only that portion of the sentence imposing consecutive sentences and remand for the purpose of determining whether the sentences should run consecutive or concurrent."). On remand, the trial court should determine whether the

sentences should run consecutive or concurrent and provide reasons for its decision.

## B. Iowa Code section 902.4

Part of Null's complaint to the district court was that even if his new sentence technically provides him an opportunity for parole, that opportunity is not meaningful because the department of corrections will not allow him to take certain necessary rehabilitative programs until his discharge date nears.[2]  Null urges us to interpret Iowa Code section 902.4 in a way he believes will allow him to raise these concerns in the future.

Iowa Code section 902.4 allows the district court to reconsider a felony sentence and "reaffirm it or substitute it for any sentence permitted by law," for a period of one year after a person who is convicted begins to serve their sentence.  Null asserts that we should find the one-year limitation is not applicable to juveniles, so that the district court may reconsider his sentence at any time.  Null does not claim, insofar as we can tell, that section 902.4 is unconstitutional on its face.  Nor is he asserting that it has been unconstitutionally applied to him.  Rather, he maintains we should interpret the statute as he urges because it is "the most direct and expedient and effective means of giving a juvenile offender a forum to assert that his sentence is not being implemented in a manner consistent with the guarantees" of the Iowa

---

[2] Although we remand for resentencing, we address Null's second argument because we believe he is likely to make it again on remand.  *See e.g.*, *McElroy v. State*, 703 N.W.2d 385, 393 (Iowa 2005) (stating that although another issue was dispositive of the appeal, the court would address an argument "because it . . . will undoubtedly reoccur on remand"); *In re Marriage of Null*, No. 04-0873, 2005 WL 600243, at *5 (Iowa Ct. App. Mar. 16, 2005) (responding to arguments "in the interest of judicial economy . . . which may reoccur upon remand").

Constitution. But statutory interpretation is not controlled by what would be the most expedient or helpful. Rather, we are bound by the plain meaning of the words and the legislature's intent. *See McGill v. Fish*, 790 N.W.2d 113, 118 (Iowa 2010) ("We do not search for legislative intent beyond the express language of a statute when that language is plain and the meaning is clear."). "[W]ords used in a statute have their ordinary and commonly understood meaning," and we are not at liberty to interpret them otherwise. *See id.* at 119. Thus, we must decline Null's invitation to interpret section 902.4.

## IV. Conclusion

Because the district court did not state reasons on the record for running Null's sentences consecutively, and a recent change in case law requires an explanation, we vacate the portion of the sentence imposing consecutive sentences. On remand, the trial court should determine whether the sentences should run consecutive or concurrent and provide reasons for its decision. We decline Null's request to interpret Iowa Code section 902.4 so that the district court may retain jurisdiction to change a felony sentence.

**SENTENCE VACATED IN PART AND REMANDED.**

Mullins, J., concurs; McDonald, J., partially dissents.

**MCDONALD, Judge. (concurring in part and dissenting in part)**

I concur in the majority's resolution of the defendant's constitutional and statutory claim. I respectfully dissent from the majority's conclusion the district court abused its discretion in imposing consecutive sentences. In imposing sentence, "[t]he court shall state on the record its reason for selecting the particular sentence." Iowa R. Crim. P. 2.23(3)(d). *State v. Hill*, 878 N.W.2d 269, 273-74 (Iowa 2016), requires the district court to set forth its reasons for imposition of consecutive sentences with sufficient clarity (1) to provide notice to the defendant of the reason or reasons for imposition of consecutive sentences and (2) to allow for appellate review of the sentencing decision. *See* 878 N.W.2d at 273–74. At the pronouncement of the defendant's sentence, the district court stated:

> And, again, my written ruling has—includes the reasons for the Court's sentence, but I have included in my determination all of the information that I've received in the hearings that we've had in this case, including the mitigation evidence from February 27th. I've considered the Defendant's conduct. I've considered the undisputed portions of the presentence investigation report. I've considered, again, the nature and circumstances of the offense. I've considered all of the Defendant's individual characteristics and considered his confirmed criminal history. . . . I find this sentence offers the Defendant the maximum opportunity for rehabilitation balanced against the interest in protecting the community.

The district court's written sentencing order provided:

> After following the directives of the Supreme Court in resentencing Defendant, which includes applying the *Miller* factors, the Court concludes that the nature and circumstances of these offenses and the history and characteristics of Defendant, as highlighted by the *Miller* factors, warrant an indeterminate term of imprisonment not to exceed 50 years on Count I, and an indeterminate term of imprisonment not to exceed 25 years on Count II, to be run consecutively. However, the Court also finds that imposing a

mandatory minimum sentence of any kind, in light of *Lyle*, is not warranted in this case.

The record from the resentencing hearing and the district court's sentencing order sufficiently identify the reasons for the imposition of consecutive sentences to satisfy the requirements of *Hill*.

The record from the prior sentencing hearing also provides additional explanation of the district court's reason for the imposition of consecutive sentences at resentencing. *See State v. Delaney*, 526 N.W.2d 170, 178 (Iowa Ct. App. 1994) ("[W]e look to all parts of the record to find the supporting reasons."). The district court judge at resentencing was the same judge who sentenced the defendant in the first instance. At the defendant's first sentencing hearing, the district court judge provided several reasons for the imposition of consecutive sentences, including the defendant's significant juvenile criminal history, lack of rehabilitative success despite State intervention, and the nature and circumstances of the offense, including the fact "the victim was shot in the head." The written sentencing order's statement regarding the "nature and circumstances of these offenses and the history and characteristics of Defendant" are the same reasons the sentencing judge imposed consecutive sentences in the first instance.

The district court's sentence "is cloaked with a strong presumption in its favor," and we will not reverse its sentence absent an abuse of discretion. *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). We afford the strong presumption of regularity to the sentencing court due to the great confidence we place in our judges to exercise their discretion appropriately. *See State v. Sailer*,

587 N.W.2d 756, 764 (Iowa 1998). The reasons for imposition of consecutive sentences are set forth with sufficient clarity in the record as a whole. I would affirm the district court.