# IN THE COURT OF APPEALS OF IOWA

No. 19-1919
Filed January 12, 2022

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**TYJUAN LEVELL TUCKER,**
    Defendant-Appellant.
_____

    Appeal from the Iowa District Court for Polk County, William P. Kelly, Judge.


    Tyjuan Tucker appeals a jury's guilty conviction for possession of a controlled substance—marijuana—with intent to deliver. **AFFIRMED.**


    Andy Dunn and Jessica Donels of Parrish Kruidenier Dunn Boles Gribble Gentry Brown Bergmann & Messamer LLP, Des Moines, for appellant.

    Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.


    Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**VAITHESWARAN, Judge.**

A jury found Tyjuan Tucker guilty of possession of a controlled substance (marijuana) with intent to deliver. *See* Iowa Code §124.401(1)(d) (2018). On appeal, Tucker challenges: (1) the sufficiency of the evidence supporting the jury's finding of guilt; (2) the district court's determination that the underrepresentation of African-Americans in the jury pool was not due to "systematic exclusion" in the jury-selection process; (3) his trial attorney's failure to present expert testimony on the "systematic exclusion" issue; (4) the district court's exclusion of documents relating to a prior settlement; and (5) the district court's exclusion of portions of a body camera video of his arrest.

## I.      *Sufficiency of the Evidence*

The jury was instructed that the State would have to prove the following elements of possession of marijuana with intent to deliver:

> 1. On or about July 28, 2018, the defendant, Tyjaun L. Tucker knowingly possessed marijuana.
> 2. The defendant knew that the substance possessed was marijuana.
> 3. The defendant possessed the substance with the specific intent to deliver it.

The jury was further instructed "the defendant's specific intent . . . is seldom capable of direct proof."

A reasonable juror could have found the following facts. Des Moines police officers cut through the parking lot of a fast-food restaurant. According to one of the officers, they noticed two vehicles "parked not in parking spots," which immediately caught their attention. "[A] female . . . was standing at the driver's side of a green Sebring." The officers observed "some sort of an exchange, just

the hand in the window" but "could not observe what was actually exchanged." The driver of the Sebring, later identified as Tucker, made "eye contact" with the officers and "immediately exit[ed] the parking lot," cutting in front of an SUV and forcing the driver of that vehicle to brake.

The officers stopped the Sebring. Their subsequent interactions were captured on an officer's body camera. One of the officers asked Tucker to step out of the vehicle. He patted Tucker down and asked if he had been "smoking marijuana earlier." Tucker said he had not. The officer continued the search, reaching for Tucker's groin area. Tucker pulled away, screamed for help, and yelled, "why are you grabbing me?" multiple times. Additional officers arrived. One of them pulled a small plastic bag containing "about an ounce" of marijuana from Tucker's underwear. Tucker's car was searched, and a wad of cash totaling $650 was discovered in the center console. The large amount of cash could have led a reasonable juror to find that Tucker possessed the marijuana with the specific intent to deliver the substance. *See State v. Adams*, 554 N.W.2d 686, 692 (Iowa 1996) ("Intent may be inferred form the manner of packaging the drugs, from large amounts of unexplained cash, as well as from the quantity of drugs." (citations omitted)).

There was certainly evidence from which a jury could have reached a contrary finding, including Tucker's unsolicited assertion that the cash was part of a $6800 settlement he "just got," the absence of additional packaging materials or a scale inside the vehicle, and the relatively small amount of marijuana in his possession. But the "plausibility of explanations" was within the jury's purview.

*State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005). Substantial evidence supported the jury's finding of guilt. *See State v. Thomas*, 847 N.W.2d 438, 442 (Iowa 2014).

**II.     Systematic Exclusion**

Tucker argues he "was denied the right to a jury drawn from a fair cross-section of the community in violation of Article I, § 10" of the Iowa Constitution. He had the burden to

> establish a prima facie violation of the fair-cross-section requirement by showing:
>> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*State v. Lilly*, 930 N.W.2d 293, 299 (Iowa 2019) (quoting *State v. Plain*, 898 N.W.2d 801, 822 (Iowa 2017)).

Tucker maintains "[t]he first two prongs under the test in *Lilly* were undisputed." The State concedes "[t]he first prong of *Lilly* is met because Tucker is alleging underrepresentation and systematic exclusion of a distinctive group: African-Americans." The State also agrees "Tucker satisfied prong #2 of *Lilly*—the representation of African-Americans in this pool was more than one standard deviation below the average level, given the prevalence of African-Americans among Polk County residents who were eligible for jury service." The appeal turns on the third prong—proof of systematic exclusion.

Tucker contends he "met his burden under the 'systematic exclusion' prong to show that the disparate representation within the jury pool was a result of the court administration[']s jury management practices." He points to the State's use

of only "two sources—voter registration and driver's licenses—to form the jury pool" and asserts minorities have lower rates of participation in both. Tucker highlights the supreme court's statement that jury management practices may amount to systematic exclusion as well as a scholarly article cited by the court. *See Lilly*, 930 N.W.2d at 307–08 (citing Paula Hannaford-Agor, *Systematic Negligence in Jury Operations: Why the Definition of Systematic Exclusion in Fair Cross Section Claims Must Be Expanded*, 59 Drake L. Rev. 761, 790–91 (2011)).

The court did indeed discuss jury management practices in *Lilly* but stressed that "the challenger must tie the disparity to a particular practice" and "the defendant must prove that the practice has caused systematic underrepresentation." *Id.* The court quoted the following portion of Hannaford-Agor's article, which underscored the need for expert testimony:

> Litigants alleging a violation of the fair cross section requirement would still have to demonstrate that the underrepresentation was the result of the court's failure to practice effective jury system management. *This would almost always require expert testimony concerning the precise point of the juror summoning and qualification process in which members of distinctive groups were excluded from the jury pool and a plausible explanation of how the operation of the jury system resulted in their exclusion.* Mere speculation about the possible causes of underrepresentation will not substitute for a credible showing of evidence supporting those allegations.

*Id.* (emphasis added) (quoting Hannaford-Agor, 59 Drake L. Rev. at 790–91). It is clear, then, that a recitation of existing jury management practices is insufficient to establish systematic exclusion.

The district court afforded Tucker's attorney "the opportunity to put on any proof of evidence or expert testimony" on the third prong. Counsel declined, citing the "inherent, practical problems for an indigent defendant" to "hire experts under

a court-appointed case." Counsel made his systematic exclusion argument "solely based upon the fact that we use two sources for our jury pool."

The district court found insufficient "evidence to prove" systematic exclusion. "[B]ased on the lack of evidence," the court "overrule[d] the objection" to the composition of the jury pool and proceeded to trial.

On our de novo review of the record, we agree Tucker failed to tie Iowa's use of the two lists to systematic underrepresentation of a minority group. *See Lilly*, 930 N.W.2d at 308. We affirm the district court's ruling on the systematic exclusion prong of the "fair cross section" requirement.

## III. *Ineffective Assistance—Failure to Present Expert Testimony*

Tucker argues his trial attorney was ineffective in failing to present expert testimony on whether jury management practices resulted in systematic exclusion of African-Americans from the jury pool. He is foreclosed from raising this ineffective-assistance-of-counsel claim on direct appeal. *See* Iowa Code § 814.7 (stating effective July 1, 2019—before Tucker was sentenced—an ineffective-assistance-of-counsel claim "shall not be decided on direct appeal from the criminal proceedings"); *State v. Treptow*, 960 N.W.2d 98, 108 (Iowa 2021) (concluding "[t]here is no due process right to present claims of ineffective assistance of counsel on direct appeal").

## IV. *Exclusion of Settlement Documents*

During trial, the prosecutor moved to exclude "a settlement statement and other records" "just . . . handed" to her by Tucker's attorney. She cited the "pretty strict discovery process" including reciprocal discovery that took place months earlier. The prosecutor explained, "The State has gotten no notice of this, no

opportunity to deal with this, to look into the validity of any of it." Tucker's attorney pointed out the proposed exhibit was "merely documentation to . . . rebut the accusation that these were drug funds and not from legitimate means."

The district court excluded the documents. The court reasoned:

> Mr. Tucker did not comply with the State's application for reciprocal discovery within 14 days of the order . . . . [The case] has been pending for a long time. A continuance does not seem appropriate. The disclosure of these documents on the second day of trial, without allowing the State to prepare for those documents, it appears to violate the rule. . . . There's nothing that prohibits Mr. Tucker from testifying about the settlement. But to submit those documents . . . would impact our whole process of authentication, identification, and preparation . . . . This is an important trial. This appears to be unfair surprise.

On appeal, Tucker argues "[t]he erroneous exclusion of [his] settlement documents as a discovery sanction denied [him] the opportunity to put on a defense in violation of the Fifth Amendment [of the United States Constitution] and Article I, § 10 [of the Iowa Constitution]." Because the constitutional component of the argument was neither raised nor decided, we decline to consider it. *See In re C.W.*, No. 19–1658, 2020 WL 564825, at *4 (Iowa Ct. App. Feb. 5, 2020) (citing *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002)). We simply review the propriety of exclusion as a discovery sanction.

Iowa Rule of Criminal Procedure 2.14(6)(c) states the court may "prohibit the party from introducing any evidence not disclosed." Review of an exclusion ruling under this rule is for an abuse of discretion. *See State v. Schuler*, 774 N.W.2d 294, 297 (Iowa 2009).

As Tucker pointed out, the documents he sought to introduce would have bolstered his claim that the large amounts of cash found in his vehicle were not

drug proceeds or funds used to purchase drugs. But, as the district court noted, Tucker was free to testify to the source of the money. In fact, he did so, stating he injured himself and received a settlement "two days prior to being pulled over." He said he cashed the check, bought a car with a portion of the proceeds, and placed the leftover money in the center console of his car. A portion of the body camera video introduced at trial included Tucker's statement about the source of the cash. And one of the officers at the scene agreed Tucker mentioned receipt of a settlement. In short, the jury was privy to Tucker's explanation notwithstanding the court's exclusion of the settlement documents. *See State v. Belken*, 633 N.W.2d 786, 796 (Iowa 2001) (stating "undisclosed evidence that was merely cumulative" was less likely to be prejudicial).

On the other side of the coin, the belated offer of the documents prejudiced the State. The lynchpin of the "intent to deliver" portion of the State's charge was the cash. The State had no opportunity to modify its trial strategy in light of the documents or gather evidence to counter the possible admission of the documents. *See id.* (examining a prejudice claim "in the context of its effect on . . . trial strategy.").

We conclude the district court did not abuse its discretion in excluding the settlement documents.

## V. *Exclusion of Entire Body Camera Video*

The State offered a portion of the body camera video as an exhibit. Tucker objected, arguing the "rule of completeness" required introduction of the entire recording. The district court overruled the objection.

Tucker now argues the State used his negative on-camera reaction to infer he was "distributing marijuana." In his view, the district court should have admitted the entire footage to provide an alternate explanation for his reaction, specifically that he was previously shot by a police officer. Tucker frames his argument as a constitutional violation, an issue that was not preserved. We will review the issue under our evidentiary rules.

Rule 5.106, described as the rule of completeness, states, "[i]f a party introduces all or part of a[] . . . recorded statement, an adverse party may require the introduction, at that time, of any other . . . recorded statement that in fairness ought to be considered at the same time." "[T]he rule of completeness may trump the ordinarily applicable rules of evidence. Yet, the rule cannot be simply used as an 'end run around the usual rules of admissibility.'" *State v. Huser*, 894 N.W.2d 472, 509 (Iowa 2017) (citation omitted). "[A]ll relevant evidence, [including statements offered under rule 5.106, is] subject to the rule 5.403 balancing test that compares the probative value of the statements to their danger of unfair prejudice and confusing the jury." *State v. Davis*, No. 13–1099, 2014 WL 5243343, at *7 (Iowa Ct. App. Oct. 15, 2014).

The district court found the evidence of minimal probative value. The court stated Tucker's discussion of the shooting as well as the officers' discussion did not raise "a fact of consequence in dealing with drug possession." In the court's words, "I do not see how talking about an officer shooting, how that tends to make a fact of consequence more or less probable." The court also concluded the evidence "could lead the jury to a conclusion on an improper basis." The court stated, "that's one of the things that we try to keep out so that the jury can stay

focused on the facts at hand, on the case at hand, and to really focus in on the elements that the State has alleged that Mr. Tucker has done in this case."

We discern no abuse of discretion in the district court's ruling. Introduction of evidence relating to an independent interaction with police could have led the jury to confuse the issues. *See State v. Buman*, 955 N.W.2d 215, 221 (Iowa 2021); *State v. Walker*, 935 N.W.2d 874, 878 (Iowa 2019); *State v. Einfeldt*, 914 N.W.2d 773, 784 (Iowa 2018). The evidence also may have resulted in a trial within a trial. *See State v. Smith*, No. 18–1500, 2020 WL 1307693, at *2 (Iowa Ct. App. Mar. 18, 2020). And if the purpose of introducing the evidence was to evoke sympathy, as the district court found, that purpose was improper. *See State v. Delaney*, 526 N.W.2d 170, 175 (Iowa Ct. App. 1994) ("We look . . . to whether the evidence has an undue tendency to suggest a decision on an improper basis, appeals to the sympathies of the jury, or otherwise might cause the jury to base their decision on something other than the relevant legal propositions."). We affirm the district court's exclusion of the full body camera video.

Tucker's judgment for possession of marijuana with intent to deliver is affirmed.

**AFFIRMED.**